UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED ASSOCIATION LOCAL 198 PENSION FUND; UNITED ASSOCIATION LOCAL 198 WELFARE FUND; UNITED ASSOCIATION LOCAL 198 EDUCATION FUND; UNITED ASSOCIATION LOCAL 198 ANNUITY FUND; AND UNITED ASSOCIATION LOCAL UNION NO. 198 | CIVIL ACTION NO.: 19-403-SDD-SDJ |

VERSUS

STEVENS PLUMBING & PIPING, LLC

## **RULING**

This matter is before the Court on the *Motion for Default Judgment*[1] by Plaintiffs, United Association Local 198 Pension Fund ("Pension Fund"); United Association Local 198 Welfare Fund ("Welfare Fund"); United Association Local 198 Education Fund ("Education Fund"); United Association Local 198 Annuity Fund ("Annuity Fund"); and United Association Local Union No. 198 ("Local 198") (collectively, "Plaintiffs"). The sole Defendant is Stevens Plumbing & Piping, LLC ("Stevens" or "Defendant"), and Defendant has never appeared in this matter or filed an *Opposition* to this motion despite being

---

[1] Rec. Doc. No. 11.
60480

personally served on June 29, 2019.[2]  Plaintiffs moved for the Clerk of Court's entry of preliminary default,[3] which was granted on August 14, 2019.[4]  Plaintiffs now move for a *Judgment of Default*.  Pursuant to the Court's *Order*,[5] Plaintiffs supplemented its *Motion for Default Judgment* and supporting exhibits.[6]  Plaintiffs are seeking damages totaling $89,265.30.[7]  For the following reasons, Plaintiffs' motion is **GRANTED**, and Plaintiffs are awarded damages totaling **$89,265.26**.

## I.    BACKGROUND

This case arises out of a claim for delinquent fringe benefit contributions and union dues/assessments due to the Plaintiffs under §§ 502(a),(e), and (f) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 (a), (e) and (f) and 1145, and § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).[8]

Plaintiffs claim that Defendant is a party to a Collective Bargaining Agreement ("CBA") with Local 106 dated June 1, 2013.[9] Local 106 merged with Local 198 on January 1, 2014.[10] The CBA binds Defendant to the trust agreements for the respective Funds named as Defendants (collectively "the Funds").[11]  The CBA and the respective trust agreements require Defendant to submit monthly remittance reports and pay monthly

---

[2] Rec. Doc. No. 4.
[3] Rec. Doc. No. 5.
[4] Rec. Doc. No. 7.
[5] Rec. Doc. No. 17.
[6] Rec. Doc. No. 21.
[7] Rec. Doc. No. 21 at 5.
[8] Rec. Doc. No. 1 at 1.
[9] Rec. Doc. No. 1 at 2; Rec. Doc. No. 11-2 at 2, 7-26.
[10] Rec. Doc. No. 11-2 at 2, citing Rec. Doc. No. 21-3.
[11] Rec. Doc. Nos. 1 at 2-3; 11-2.
60480

fringe benefit contributions[12] on behalf of employees covered by the CBA to the Funds as well as to submit deducted union dues/assessments to Local 198.[13]

According to Plaintiffs' *Complaint*, the CBA expired on May 31, 2015. However, the CBA provides that "[t]he [CBA] shall continue in force from year to year thereafter unless either party notifies the other at least ninety (90) days in advance of the anniversary date, in writing, of its desire to terminate or modify this [CBA]."[14]  Plaintiffs presented evidence that Defendant never notified Local 106 or Local 198 of its intention to terminate the CBA.[15]

Plaintiffs claim that Defendant failed to submit contributions to the Funds and Local 198 on behalf of covered employees for the work months of June 2016 to December 2017 and January 2018 to August 2018 and that delinquent contributions, interest and penalties are currently due and owing to the Funds.[16]  The Funds are also entitled to recover all costs incurred in exacting compliance with the applicable CBA, including the cost of the audit necessary to determine whether all contributions due were made.[17]

---

[12] These contributions fund retirement benefits, health and welfare benefits, and apprenticeship training benefits.  As of June 1, 2014, the contribution rates were $4.65 and $4.00 for health and welfare benefits, $6.90 for retirement benefits, $1.00 for defined contributions, $1.00 for apprenticeship training, and 4% for working dues.  Rec. Doc. No. 11-1 at 3 citing Rec. Doc. No. 11-2 at 7-26; Rec. Doc. No. 21-1 at 3.  The hourly contribution rates decreased effective September 2016 to $0.44 for defined contribution, $0.25 for the Education Fund, and 2% for working dues.  Rec. Doc. No. 21-1 at 4.  The Trustees of the Welfare Fund increased the contribution rate to $5.00/hour, effective September 2016 to August 2017, and increased the contribution rate to $6.00/hour effective September 2017 to present.  The Trustees of the Pension Fund increased the contribution rate to $7.25/hour effective September 2016 to August 2017.  The Trustees of the Pension Fund increased the contribution rate to $7.60 effective September 2017 to August 2018.  Rec. Doc. No. 11-2 at 4.
[13] Rec. Doc. No. 1 at 3; Rec. Doc. No. 11-2 at 7-26.
[14] *Id.*
[15] Rec. Doc. No. 11-2 at 3.
[16] Rec. Doc. No. 11-1 at 4; Rec. Doc. No. 11-2 at 5; Rec. Doc. No. 21 at 3.
[17] Rec. Doc. No. 21-4 at 21-25; Rec. Doc. No. 21-5 at 70.

60480

Plaintiffs aver that the Funds are entitled to unpaid contributions under §§ 502 and 515 of ERISA, 29 U.S. C. §§ 1132 and 1145, and § 301 of the LMRA, 29 U.S.C. § 185. In addition to the unpaid contributions, the Funds claim to be entitled to the following, pursuant to § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2): (a) interest on the unpaid contributions; (b) liquidated damages; (c) reasonable attorney's fees and cost of litigation; and (d) any other legal or equitable relief this Court deems appropriate.[18]

Plaintiffs have presented evidence supporting their claims for delinquent contributions, interest and penalties in the total amount of $74,027.76 and for costs and attorneys' fees in the total amount of $15,237.50.

## II. LAW AND ANALYSIS

### A. Default Judgment

The United States Court of Appeals for the Fifth Circuit has outlined a three step process to obtain a default judgment: (1) a defendant's default; (2) a clerk's entry of default; and (3) a plaintiff's application for a default judgment.[19] The service of summons or lawful process triggers the duty to respond to a complaint.[20] A defendant's failure to timely plead or otherwise respond to the complaint triggers a default.[21] Accordingly, Rule 55 provides that the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise...."[22]

---

[18] Rec. Doc. No. 1 at 4.
[19] See *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.1996).
[20] *Fagan v. Lawrence Nathan Assocs.*, 957 F.Supp.2d 784, 795 (E.D.La. 2013) (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir.1999)).
[21] *N.Y. Life Ins. Co.*, 84 F.3d at 141.
[22] Fed.R.Civ.P. 55.
60480

After the Clerk of Court has found a defendant to be in default, the Court may, upon motion by a plaintiff, enter a default judgment against the defaulting defendant.[23] Default judgments are "generally disfavored in the law" in favor of a trial upon the merits.[24] Indeed, default judgments are considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.... [T]hey are 'available only when the adversary process has been halted because of an essentially unresponsive party.'"[25]  Even so, this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion."[26]  In accordance with these guidelines, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."[27] While "the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," the Court retains the obligation to determine whether those facts state a claim upon which relief may be granted.[28]

Courts have developed a two-part analysis to determine whether a default judgment should be entered against a defendant.[29]  First, a court must consider whether

---

[23] *Id.*
[24] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Mason & Hanger–Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir.1984)).
[25] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir.1989) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970)).
[26] *Rogers,* 167 F.3d at 936 (internal citations omitted).
[27] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir.1996); *see also Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.").
[28] *Nishimatsu Constr. Co.*, 515 F.2d at 1206; *see Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (affirming the district court's denial of a default judgment because, even if the plaintiffs factual allegations were found to be true, the defendants would not have been liable under the law).
[29] *Taylor v. City of Baton Rouge*, 39 F.Supp.3d 807, 813 (M.D.La. 2014); *United States v. Chauncey*, No. 14–CV–32, 2015 WL 403130, at *1 (M.D.La. Jan. 28, 2015); *see also Fidelity & Guaranty Life Ins. Co. v. Unknown Tr. of Revocable Trust–8407*, No. 13–CV–412–PRM, 2014 WL 2091257, at *2 (W.D.Tex. May 16, 2014) (citing cases).
60480

the entry of default judgment is appropriate under the circumstances.[30] The factors relevant to this inquiry include: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.[31] Second, a court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment.[32]

### B.   Entitlement to Default Judgment

As set forth above, the Court must determine whether the entry of default judgment is appropriate under the circumstances by considering the *Lindsey* factors. As reflected by the record, Defendant failed to file an *Answer* or a motion under Rule 12 in response to the Plaintiffs' original *Complaint*. As such, there are no material facts in dispute. Further, the grounds for granting a default judgment against Defendant are clearly established, as evidenced by the action's procedural history and the Clerk's entry of default, outlined above. Nothing before the Court suggests that Defendant's failure to respond or appear was the result of either good faith mistake or excusable neglect. Finally, Defendant's failure to file any responsive pleading or motion mitigates the harshness of a default judgment.[33] The Court is not aware of any facts that would lead it to set aside the default judgment if challenged by Defendant. Thus, the Court finds that

---

[30] *See Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir.1998).
[31] *Id.* The factors are referred to as "the *Lindsey* factors".
[32] *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.
[33] *See Taylor*, 39 F.Supp.3d at 814.

60480

the *Lindsey* factors weigh in favor of default.

The Court must also decide if Plaintiffs' pleadings provide a sufficient basis for a default judgment against Defendant. As set forth above, Plaintiffs sued Defendant for collection of unpaid fringe benefits under ERISA and the LMRA. Further, Defendant is a party to the CBA with Local 198, the terms of which do not appear to be in dispute and seemingly provide for the payments and amounts sought by Plaintiffs.

### C.    Damages

A defaulting defendant "concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages."[34] A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated "by detailed affidavits establishing the necessary facts."[35] If a court can mathematically calculate the amount of damages based on the pleadings and supporting documents, a hearing is unnecessary.[36]

All of the elements of Plaintiffs' damages are mathematically calculable based on the supporting documentation and affidavits submitted, and a hearing is not necessary.

Plaintiffs justify the sought-after award for delinquent contributions by citing the language in the agreements obligating Defendant to pay the contributions and by offering the affidavit testimony of Suzonne Maglonne, the plan administrator for the Funds, tracing the contribution rates for the delinquent years. Likewise, Plaintiffs provide the language from the agreements allowing for the award of interest and penalties and the applicable

---

[34] *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011).
[35] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979).
[36] *Joe Hand Promotions, Inc. v. Alima*, No. 3:13–CV–0889–B, 2014 WL 1632158, at *3 (N.D.Tex. Apr. 22, 2014) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir.1993)).
60480

rates and by offering the affidavit testimony of Maglonne in further support. In their supplemental memorandum in support of their motion, Plaintiffs provided an "amended" and more expansive affidavit of Suzonne Maglonne with an attached spreadsheet that shows the hours and pay rate for each employee and computes the damages claimed.[37] For example, the spreadsheet lists every month that employee Chad Busby worked in the time period of deficient payments, the hours worked per month, the applicable rate for that month, the interest owed for that month based on 16% per annum, gross wages for the month, and working dues at the applicable rate.[38] The hours worked and gross wages for each individual employee are supported by the monthly contribution rates and the affidavit testimony of Maglonne.[39] Utilizing the information provided in the monthly reports, the spreadsheet and the affidavit, the Court was able to mathematically calculate the damages claimed and confirm the calculations and amounts offered by the Plaintiffs in support of their motion.

Plaintiffs calculate delinquent contributions, interest and penalties as follows:

    *1.    Chad Busby*

Chad Busby worked from July 2016 to August 2018. Hours worked and gross wages earned were provided for each month, as well as the applicable contribution rates for the four funds, applicable interest rates, and applicable monthly dues assessments.[40] For the time period at issue in which Busby worked, delinquent contributions to the

---

[37] Rec. Doc. Nos. 21-1, 21-12.
[38] Rec. Doc. No. 21-12 at 1.
[39] Rec. Doc. No. 21-11.
[40] Rec. Doc. No. 21-12 at 1.
60480

Pension Fund totaled $22,104.90;[41] interest for the Pension Fund totaled $9,429.31;[42] delinquent contributions to the Welfare Fund totaled $7,875.00; interest for the Welfare Fund totaled $2,479.78; delinquent contributions to the Annuity Fund totaled $1,559.24; interest for the Annuity Fund totaled $710.19;[43] delinquent contributions to the Education Fund totaled $808.13;[44] interest for the Education Fund totaled $356.37;[45] and working dues owed totaled $1,984.64.[46]

### 2. Blake Bihm

Blake Bihm worked from July 2016 to January 2017. Hours worked and gross wages earned were provided for each month, as well as the applicable contribution rates for the four funds, applicable interest rates, and applicable monthly dues assessments.[47] For the time period at issue in which Bihm worked, delinquent contributions to the Pension Fund totaled $5,263.30; interest for the Pension Fund totaled $2,928.30;[48] delinquent contributions to the Welfare Fund totaled $0.00; interest for the Welfare Fund totaled

---

[41] By the Court's calculation, the total is actually $22,104.91. Plaintiffs seek $22,104.90, one cent less than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount and the amount which Plaintiffs specifically seek.

[42] By the Court's calculation, the total is actually $9429.33. Plaintiffs seek $9,429.31, two cents less than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount and the amount which Plaintiffs specifically seek.

[43] By the Court's calculation, the total is $710.19. Plaintiffs seek $710.20, one cent more than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount.

[44] By the Court's calculation, the total is actually $808.15. Plaintiffs seek $808.13, two cents less than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount and the amount which Plaintiffs specifically seek.

[45] By the Court's calculation, the total is actually $356.38. Plaintiffs seek $356.37, one cent less than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount and the amount which Plaintiffs specifically seek.

[46] By the Court's calculation, the total is $1,984.63. Plaintiffs seek $1,984.64, one cent more than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount.

[47] Rec. Doc. No. 21-12 at 2.

[48] By the Court's calculation, the total is actually $2,928.31. Plaintiffs seek $2,928.30, one cent less than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount and the amount which Plaintiffs specifically seek.

60480

$0.00; delinquent contributions to the Annuity Fund totaled $492.84; interest for the Annuity Fund totaled $281.44;[49] delinquent contributions to the Education Fund totaled $213.50; interest for the Education Fund totaled $119.75; and working dues owed totaled $457.05.[50]

### 3. Nick Otto

Nick Otto worked only for the month of July 2016. Hours worked and gross wages earned were provided for July 2016, as well as the applicable contribution rates for the four funds, applicable interest rates, and applicable monthly dues assessments.[51] For the time period at issue in which Otto worked, delinquent contributions to the Pension Fund totaled $1,079.85; interest for the Pension Fund totaled $647.91; delinquent contributions to the Welfare Fund totaled $0.00; interest for the Welfare Fund totaled $0.00; delinquent contributions to the Annuity Fund totaled $156.50; interest for the Annuity Fund totaled $93.90; delinquent contributions to the Education Fund totaled $0.00; interest for the Education Fund totaled $0.00; and working dues owed totaled $0.00.

### 4. Russell Rush

Russell Rush worked from June 2016 to November 2016. Hours worked and gross wages earned were provided for each month, as well as the applicable contribution rates for the four funds, applicable interest rates, and applicable monthly dues assessments.[52]

---

[49] By the Court's calculation, the total is $281.43. Plaintiffs seek $281.44, one cent more than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount.
[50] By the Court's calculation, the total is $457.04. Plaintiffs seek $457.05, one cent more than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount.
[51] Rec. Doc. No. 21-12 at 3.
[52] Rec. Doc. No. 21-12 at 4.
60480

For the time period at issue in which Rush worked, delinquent contributions to the Pension Fund totaled $2,210.00; interest for the Pension Fund totaled $1,239.46; delinquent contributions to the Welfare Fund totaled $1,384.00; interest for the Welfare Fund totaled $838.37; delinquent contributions to the Annuity Fund totaled $135.00;[53] interest for the Annuity Fund totaled $75.71;[54] delinquent contributions to the Education Fund totaled $203.50;[55] interest for the Education Fund totaled $116.16; and working dues owed totaled $86.53.

### 5.   Penalties

Penalties on delinquent amounts is assessed at 20% of the base contributions.[56] Therefore, penalties owed to the Pension Fund are $6,131.61 ($30,658.05 x .20); penalties owed to the Welfare Fund are $1,851.80 ($9,259.00 x .20); penalties owed to the Annuity Fund are $468.72 ($2,343.58 x .20); and penalties owed to the Education Fund are $245.03 ($1,225.13 x .20).

### 6.   Totals

Based on the above, a total of $30,658.05 is owed in delinquent contributions to the Pension Fund; a total of $14,244.98 is owed in Pension Fund interest; a total of

---

[53] By the Court's calculation, the total is $135.01. Plaintiffs seek $135.00, one cent less than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount and the amount which the Plaintiffs specifically seek.

[54] By the Court's calculation, the total is $75.72. Plaintiffs seek $75.71, one cent less than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount and the amount which the Plaintiffs specifically seek.

[55] By the Court's calculation, the total is $203.51. Plaintiffs seek $203.50, one cent less than that to which the supporting affidavits and documentation show they are entitled. The Court will utilize the lesser amount and the amount which the Plaintiffs specifically seek.

[56] ERISA § 502(g)(2)(ii); 29 U.S.C. § 1132. In their initial memorandum in support of their motion, Plaintiffs sought an amount in penalties equal to that of the amount of interest owed. However, in their supplemental memorandum, Plaintiffs opted for the amount of 20% of the base contributions in an effort not to risk assessing more than what is allowed under ERISA. Rec. Doc. No. 21 at 3, n. 4.

60480

$9,259.00 is owed in delinquent contributions to the Welfare Fund; a total of $3,318.15 is owed in Welfare Fund interest; a total of $2,343.58 is owed in delinquent contributions to the Annuity Fund; a total of $1,161.23 is owed in Annuity Fund interest; a total of $1,225.13 is owed in delinquent contributions to the Education Fund; a total of $592.28[57] is owed in Education Fund interest; and a total of $2,528.20 is owed in working dues assessments.

The total amount owed in delinquent contributions and working dues assessments is $46,013.96.[58] The total amount owed in interest is $19,316.64.[59] Total penalties owed are $8,697.16.[60]

The total amount owed in delinquent contributions, working dues assessments, interest, and penalties is **$74,027.76**.[61]

### 7. Costs and Attorneys' Fees

Plaintiffs seek costs and attorneys' fees under ERISA § 502(g).[62] Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."[63] It is generally required, however, that the following five factors be considered in deciding whether to award attorneys' fees to a party under § 1132(g)(1):

---

[57] By the Court's calculation, the total is $592.28. Plaintiffs represent a total of $592.29. Rec. Doc. No. 21-12 at 5. The Court will utilize the lesser amount of $592.28.
[58] By the Court's calculation, the total is $46,013.96. Plaintiffs represent a total of $46,013.98. *Id.* The difference is due to the adjustments in calculations for each individual employee noted above.
[59] By the Court's calculation, the total is $19,316.64. Plaintiffs represent a total of $19,316.68. *Id.* The difference is due to the adjustments in calculations for each individual employee noted above.
[60] By the Court's calculation, the total is $8,697.16. Plaintiffs represent a total of $8,697.15. *Id.* The difference is due to the adjustments in calculations for each individual employee noted above.
[61] Because calculations have shown contributing amounts to differ, the Court's total is necessarily four cents less than that represented by Plaintiffs. *Id.*
[62] Rec. Doc. No. 21 at 3.
[63] 29 U.S.C. § 1132(g)(1).
60480

> [A] court should consider such factors as the following: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position.[64]

Here, Plaintiffs provide little information to apply the *Bowen* factors. Considering Defendant has not responded to the demands of Plaintiffs and has not answered the *Complaint,* and in considering the record before the Court, Defendant's culpability seems certain. There is no information available to the Court to suggest that Defendant is unable to pay the amount of damages sought, including the attorneys' fees and costs. As set forth above, Plaintiffs' position is strong on the merits, and the fees and costs sought is a small fraction of the total damages sought. Despite the foregoing, as the Supreme Court stated in *Hardt,*[65] the requirement for an award of fees is that a party achieve some degree of success on the merits.[66] A district court may consider the five *Bowen* factors, but *Hardt* does not mandate consideration.[67] Where a motion is unopposed, the prevailing party "clearly" succeeds on the merits and is entitled to fees.[68]

Once the district court concludes that a party is entitled to attorneys' fees, it must utilize the "lodestar" method to determine the amount to be awarded.[69] Under this method, the district court must determine the reasonable number of hours expended on the

---

[64] *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980) (the "*Bowen* factors").
[65] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010).
[66] 130 S.Ct. at 2158.
[67] 130 S.Ct. at 2158 & n. 8 ("Because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section.").
[68] *1 Lincoln Financial Co. v. Metropolitan Life Ins. Co.,* 428 F. App'x 394, 396 (5th Cir. 2011).
[69] *Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1459 (5th Cir. 1995).
60480

litigation[70] and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the "lodestar".[71] The lodestar is then adjusted upward or downward, depending on the circumstances of the case, after assessing the dozen factors set forth in *Johnson v. Georgia Highway Express*.[72] The fee applicant has the burden to submit adequate documentation of the hours reasonably expended.[73]

Plaintiffs offer the affidavit of Paula Bruner, counsel for Plaintiffs, in support of their claim for costs and attorneys' fees. Counsel for Plaintiffs charged a rate of $250.00/hour, which counsel represents to be "commensurate with the hourly rates charged by attorneys in the New Orleans and the Baton Rouge areas with similar experience", for a total of 59.25 hours of work for a total of $14,525.00 in attorneys' fees. Counsel attests that costs total $712.50.[74] In further support, Plaintiffs offer a Detailed Cost Transaction "outlining each entry of time worked and billed to prosecute this litigation".[75] The total amount reflected in the Detailed Cost Transaction is **$15,237.50** ($14,525.00 + $712.50).[76]

---

[70] This calculation requires not only a determination of whether the total number of hours claimed were reasonable but also whether the particular hours claimed were reasonably expended. *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 325 (5th Cir.1995).

[71] *Kellstrom,* 50 F.3d at 324; *Forbush v. J.C.Penney Co.,* 98 F.3d 817, 821 (5th Cir.1996).

[72] 488 F.2d 714, 717–19 (5th Cir.1974); *Kellstrom,* 50 F.3d at 329; *Forbush,* 98 F.3d at 821. These factors include: (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee: (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases.

[73] *Kellstrom,* 50 F.3d at 324.

[74] Rec. Doc. No. 21-13 at 2.

[75] *Id.*, citing Rec. Doc. No. 21-14.

[76] Rec. Doc. No. 21-14 at 7.

60480

The Fifth Circuit has previously found similar support for an award of fees and costs to be "marginal at best".[77] However, although "sparse" in documentation, the Fifth Circuit could not find such support to be "so vague or incomplete" to preclude a meaningful review as to whether the hours expended were reasonable.[78] Here, unlike the documentation reviewed by the Fifth Circuit, the billing entries were much more descriptive and very detailed. The hours expended from pre-suit attempt to collect payment through default judgment was under sixty hours. The work was performed by differing levels of attorneys at rates ranging between $200/hour to $250/hour. These rates are reasonable for the specialized nature of the work and the location and reputation of the law firm. Further, the total amount of fees and costs, less than $20,000.00, in relation to the result obtained evidences efficient work with a high-value result. While Plaintiffs' counsel could have provided additional information to be considered when applying the *Johnson* factors, the Court finds that sufficient support has been provided to determine that the fees and costs sought are reasonable and in compliance with the *Johnson* factors.[79]

### D.    Expert Testimony or Evidentiary Hearing

Although the Court was able to confirm Plaintiffs' entitlement to the damages sought as well as to calculate damages, the Court is mindful that the calculation of damages is largely dependent upon the testimony of Suzonne Maglone, the plan administrator for Local 198. Although not directly addressed by Plaintiffs, Plaintiffs seem

---

[77] *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997).
[78] *Id.*, at 823, citing *League of United Latin American Citizens # 4552 v. Roscoe Indep. School Dist.,* 119 F.3d 1228, 1233 (5th Cir.1997).
[79] *See Primrose Operating Co. v. National Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)("trial courts are considered experts as to the reasonableness of attorney's fees").
60480

to believe that the testimony of the plan administrator, along with supporting documentation, is sufficient to meet Plaintiffs' evidentiary burden. While the record supports Plaintiffs' claims and calculation of damages, the Court questions whether expert testimony is required.

Several circuits have utilized the services of an actuary in the calculation of benefits.[80] However, other circuits intimate that plan administrators are the experts in the benefits plans.[81] In at least one instance in the Eastern District of New York,[82] an arbitrator calculated delinquent contributions, interest, liquidated damages, and attorneys' fees and costs based on the terms of a collective bargaining agreement and without expert evidence.[83] The defendant did not participate in the arbitration, and the arbitrator's calculations were based solely on what was provided by the plaintiff.[84] The district court confirmed the arbitrator's calculation of damages and granted the plaintiff's motion for default judgment. The district court stated that there simply must be "some grounds on which to grant the damages" and did not find a necessity for expert evidence in support of the damages calculation.[85] Because the matter had already proceeded through arbitration, the district court relied upon the arbitrator's calculations despite the noted absence of supporting documentation for the delinquent contributions and a chart

---

[80] *McDowell v. Price,* 731 F.3d 775 (8th Cir. 2013); *Gallo v. Amoco Corp.*, 102 F.3d 918, 921 (7th Cir. 1996); *Martin v. American Bancorporation Retirement Plan*, 407 F.3d 643, 647 (4th Cir. 2005); *Clark v. Feder Semo & Bard, P.C.*, 895 F.Supp.2d 7, 22-23 (D.C. Aug. 15, 2012).
[81] *Hitchcock v. Cumberland University 403(b) DC Plan*, 851 F.3d 552, 562 (6th Cir. 2017).
[82] *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Coop. v. The Flooring Experts, Inc.,* 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013).
[83] *Id.*, at *6.
[84] *Id.*
[85] *Id.*

60480

showing a calculation of damages. It was sufficient that the damages appeared to be correctly calculated.[86]

Given that there is no bright-line rule that expert testimony must be provided in support of calculating delinquent contributions, interest, and liquidated damages, as well as the fact that Plaintiffs provided copies of all plans, all supporting documentation, the CBA, the audit, a chart showing calculations step by step, and the hours worked and wages earned for the employees at issue, the Court does not find that expert testimony is necessary for Plaintiffs to prevail on proving the amount of damages owed.

"When a party seeks a default judgment for damages, the Fifth Circuit has held that 'damages should not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts.'"[87] Furthermore, "where the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing is unnecessary."[88] Applying the reasoning and analysis in *Fagan* and *Desimone*, the Court is mindful that, provided that a plaintiff's pleadings and supporting documents can establish with certainty the amount of the damages sought, a damages hearing may be unnecessary even in the absence of expert testimony.

The Court has reviewed the Plans, the reports of hours worked and income, and the applicable provisions of ERISA providing for interest and penalties, which accurately

---

[86] *Id.*, at *7-8.
[87] *Fagan v. Lawrence Nathan Associates, Inc.* 957 F.Supp.2d 784, 802 (E.D. La. July 9, 2013) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).
[88] *Id.* at 802 (citing *Columbia Pictures Indus., Inc. v. Whitting*, No. 06-CA-0133, 2006 WL 1851388, at *1 (W.D. Tex. June 1, 2006)).

60480

substantiate the damages requested. Accordingly, the Court does not deem expert testimony or a hearing necessary to determine Plaintiffs' damages.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's *Motion for Default Judgment*[89] is GRANTED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on June 1, 2020.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[89] Rec. Doc. No. 11.
60480